# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RANDAL L. TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-304-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Randal L. Tucker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 24, 1958, and was fifty years old at the time of his most recent administrative hearing. (Tr. 31, 107). He completed the twelfth grade (Tr. 133), and has worked as a highway maintenance worker and security guard (Tr. 50). The claimant alleges that he has been unable to work since October 27, 2006 due to his degenerative disc disease of the lumbar spine. (Tr. 127).

## Procedural History

On January 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 10, 2009. (Tr. 12-22). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that, before December 24, 2008, the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations of only occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, as well as a sit/stand option at will. (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled

because there was work he could perform in the regional and national economies, *e. g.*, hand working/hand suture winder and assembly/fishing reel. (Tr. 21). The ALJ then found that, on December 24, 2008, the claimant became disabled because his age category changed and there were no jobs existing in significant numbers that the claimant could perform. (Tr. 22).

## Review

The claimant contends that the ALJ erred in the portion of his opinion that found the claimant not disabled: (i) by improperly evaluating the opinions of two treating physicians, Drs. Larry Lewis and Brent Hisey, and (ii) by formulating an RFC not based on substantial evidence. The Court finds the claimant's first contention persuasive for the following reasons.

The ALJ found the claimant had the severe impairments of degenerative disc disease of lumbar spine status post two surgeries and hypertension. (Tr. 14). The relevant medical evidence reveals that, following a back injury in October 2006, the claimant underwent a lumbar spinal fusion on May 14, 2007. (Tr. 190, 261.) On January 21, 2008, the claimant underwent removal of his internal instrumentation. (Tr. 557, 563-571).

Dr. Lewis treated the claimant for, *inter alia*, back pain and hypertension. (Tr. 219-226, 548-549). On March 20, 2008, he completed a Physical Capacities Evaluation, indicating that the claimant could sit/stand/walk less than one hour in a workday, or would need a sit/stand at will option; that he could grasp and use fine manipulation and use his hands for repetitive motions, but not for pushing and pulling; that the claimant

could not use his feet for repetitive movements; that he could only occasionally lift/carry up to five pounds and stoop and kneel, but never, climb, balance, crouch, crawl, and reach above or shoulder level. (Tr. 520-521). Dr. Lewis attributed the claimant's fatigue to constant disabling pain due his injury and subsequent surgeries. (Tr. 521-522). Additionally, he stated that the claimant's pain had severe mental effects, including increased anxiety and disturbance of mood. (Tr. 524-526). Dr. Lewis's handwritten notations state that the claimant had become more picky about the condition of his home, and that he had some partial inability to function independently outside his home. (Tr. 524-525). He further noted that the claimant had marked functional limitations and four or more repeated episodes of decompensation. (Tr. 527). Last, Dr. Lewis completed a Mental RFC assessment and found that the claimant had marked limitations in the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and work week, and the ability to travel in unfamiliar places or use public transportation. He also noted moderate limitations in remembering locations and work-like procedures, understanding and remembering detailed instructions, and carrying out detailed instructions, but no significant limitations in the other areas of functioning. (Tr. 529-530). On February 21, 2009, Dr. Lewis wrote a letter stating that the claimant had "severe pain which limits him in being able to do any type of physical labor," and that he did "not anticipate that he will ever be able to return to the work force." (Tr. 642). On November 23, 2009, he completed another Physical Capacities Evaluation, stating that the claimant was incapable of tolerating even low stress jobs. (Tr. 647).

Dr. Hisey treated the claimant and also drafted a number of letters to the claimant's employer as to the claimant's back problems. Throughout 2007 and into 2008, Dr. Hisey regularly asserted to the claimant's employer that he was temporarily totally disabled. (Tr. 254-258, 307-312, 560-562). In August 2007, Dr. Hisey authorized the claimant to begin physical therapy (Tr. 298), and he did so from August to November 2007. The therapist's August 8, 2007 assessment stated that the claimant had a good potential for overall rehabilitation. (Tr. 511). As the treatment continued, the therapist noted mild, moderate, and increased complaints of pain. (Tr. 406, 410, 413, 416, 419, 423, 429, 431, 454-464, 487-496). Additionally, the physical therapist began to notice problems with balancing. (Tr. 453, 467, 478-484). On October 12, 2007, the therapist stated that the claimant was unable to rise from a seated position without losing his balance. (Tr. 426). On September 24, the therapist noted that the claimant continued to experience balancing problems and low back pain, but that he was exercising with "less difficulty." (Tr. 444). On October 2, 2007, the therapist opined that his "[o]verall rehabilitation potential is fair." (Tr. 437). On November 16, 2007, the therapist's assessment stated, "client tolerated today's treatment/therapeutic activity with moderate complaints of pain and difficulty. Patient does not seem to be improving with therapy." (Tr. 379). On February 6, 2007, Dr. Hisey wrote that the claimant had noted considerable improvement since that surgery, but that he continued to have right lower extremity dysesthesias that would likely not completely resolve because it was the result of some nerve damage. (Tr. 572). On March 25, 2008, Dr. Hisey completed a Physical Capacities Evaluation, indicating that the claimant could sit/stand/walk no hours in an

eight-hour workday, and could not grasp, push, pull, finely manipulate, or use his feet for repetitive motion. (Tr. 551). He indicated that the claimant was also suffering from fatigue, that this assessment was based on the claimant's postop recovery, and that the claimant remained temporarily totally disabled. (Tr. 552-553). On July 28, 2008, Dr. Hisey released the claimant from his care with a 20-pound weight lifting restriction and no repetitive motion of the lumbar spine, and noted that the claimant "may require vocational assistance to find suitable employment." (Tr. 625).

In May 2008, Dr. Hisey referred the claimant to Dr. Amal Moorad for pain management, treatment, and rehabilitation. (Tr. 581). Dr. Moorad assessed the claimant with "failed back syndrome status-post solid fusion and instrumentation removal." (Tr. 582). He recommended the claimant have a "strict home exercise program" for strengthening, stabilization, stretching, and walking, and counseled the claimant on addiction and drug dependency issues. (Tr. 582-583). On August 18, 2008, Dr. Moorad wrote that the claimant was still experiencing significant pain and spasms, was still using a cane to ambulate, and again needed medication adjustment. (Tr. 628). On November 25, 2008, Dr. Moorad explained to the claimant that his chronic pain was something that he would have to live with, and that it was time to begin a pain maintenance program. (Tr. 635). On December 21, 2009, a state workman's compensation evaluation found that the claimant was capable of returning to work and possessed transferable skills, but that he was not a training candidate for a formal full time training program because he had low academic abilities and a low average IQ. (Tr. 661).

The claimant testified at the administrative hearing that he injured his lower back while working in October of 2006, that the pain radiates down into his legs and continues to be nearly constant, that walking and sitting making his pain worse, and that he has bad days four or five days a week. (Tr. 34, 37-38). Additionally, his medications make him drowsy, but he does not sleep very well at night. (Tr. 35). He testified that he helps some with chores, but does not really do much housework, and he is able to take care of his personal grooming but has some hygiene issues. (Tr. 38-39). Further, he stated that and that he and his wife occasionally go to church and he drives three to four times a month, but has difficulty doing so because of his back problems. (Tr. 39).

The ALJ summarized the claimant's testimony and the medical evidence. As to Dr. Hisey, the ALJ used his treatment notes to refute the claimant's testimony that the instrumentation removal did not help with his pain level. (Tr. 18). The ALJ referred to a notation by Dr. Hisey's stating that the claimant had experienced "considerable improvement," and also noted that Dr. Hisey had recommended pain management. The ALJ then turned to Dr. Hisey's release of the claimant. (Tr. 18). Later, the ALJ referred to Dr. Hisey's Physical Capacities evaluation, but stated that it was completed when the claimant was in postop recovery, and that Dr. Hisey's opinion that the claimant was temporarily totally disabled "obviously relates" to the claimant's job as a highway maintenance worker. (Tr. 19). As to Dr. Lewis, the ALJ summarized his physical capacity evaluation, and found it inconsistent with both his treatment notes recommending diet and exercise as well as Dr. Hisey's opinion that the claimant could lift up to 20 pounds and engage in activities that do not require repetitive motion of the

lumbar spine. (Tr. 19). The ALJ then noted that both opinions were inconsistent with Dr. Moorad's notes recommending "a strict home exercise program." (Tr. 19).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional

limitations expressed by his treating physicians. Drs. Lewis and Hisey expressed such opinions in their medical source statements, and while the ALJ rejected them as inconsistent with other medical evidence, the ALJ failed to specify the inconsistencies to which he was referring and in fact did not even mention Dr. Lewis's Mental RFC assessment. *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. In any event, even if the opinions expressed by Drs. Lewis and Hisey *were not* entitled to controlling weight, the ALJ should have determined the proper weight to give them by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted]. *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an

ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The ALJ failed to perform the proper analysis here.

Furthermore, although as noted above the ALJ was not required to give controlling weight to the opinions of either Dr. Lewis or Dr. Hisey that the claimant was temporarily totally disabled and/or completely unable to work, *see, e. g.,* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the ALJ nevertheless *was* required to determine the proper weight to give these opinions by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ misconstrued Dr. Hisey's opinion by finding that it only applied to the claimant's post-op recovery time, because Dr. Hisey actually found that the claimant was temporarily totally disabled from January 2007 up through the first part of 2008. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3

(July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ neither performed the necessary analysis nor specified the weight he was assigning to the treating physicians' opinions that the claimant was disabled.

Because the ALJ failed to properly analyze the weight due to the opinions of Dr. Lewis and Dr. Hisey, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, he can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma